UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: MILLER PARKING COMPANY, LLC,

                                         Case Number 13-14963
            Debtor.                      Bankr. Number 09-71272
_____ /      Honorable David M. Lawson

JAMES N. MILLER, TRUSTEE
JAMES N. MILLER REVOCABLE TRUST,
U/T/A NOVEMBER 19, 1998

            Appellant,

v.

K. JIN LIM, Chapter 7 Trustee,

            Appellee.
_____/

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT
AND DISSOLVING STAY**

The question presented by this appeal is whether the bankruptcy court abused its discretion when it approved a settlement among the Trustee, the estate's largest creditor, and non-parties to the bankruptcy proceeding. Appellant James N. Miller Trust, a creditor of the estate with a claim disputed by the Trustee, offers several reasons why the settlement should have been rejected by the court. But even without the deferential review standard that applies here, it is difficult to see how the bankruptcy court could have erred by approving the proposed settlement, which terminated complex and potentially lengthy litigation and provided the estate's largest creditor a substantial recovery. The order of the bankruptcy court will be affirmed.

I.

Debtor Miller Parking Company, LLC, which is sometimes referred to as Miller Parking Detroit, found itself on the wrong end of a $3 million judgment obtained in state court, and filed for bankruptcy protection. The judgment was obtained by CH Holding Company, Alan Ackerman, and CH/Brand Parking Associates (the Ackerman plaintiffs), who have filed claims in the bankruptcy. The judgment culminated a series of events that began in 2004 when Ackerman and his companies sued Bruce Miller and his companies over a business dispute. Ackerman is a minority shareholder in CH Holding (which owns three-quarters of plaintiff CH/Brand), and a former business partner of Bruce Miller, who owned Miller Parking Detroit. Bruce Miller's son, James Miller, owns Miller Parking Services, LLC (MPS). MPS allegedly acquired the assets of Miller Parking Detroit. James Miller also was the sole director of Miller Parking Company (Miller Parking Chicago), another Miller family parking business that operated in Chicago. The Weinstein and Stein parties are Bruce Miller's children and grandchildren, who together with James Miller's personal and family trusts owned all of the shares in Miller Parking Chicago.

Ackerman initiated the 2004 state court lawsuit following a breakdown in a prior business relationship between CH Holding and Miller Parking Detroit. In February 2009, while the Oakland County case was pending, an unaffiliated entity that held a long-term lease on Miller Parking Chicago's major capital asset, the Bismark parking deck in Chicago, exercised its option to buy the deck. That left Miller Parking Chicago with no ongoing operations or major assets other than cash from the sale. On June 30, 2009, Ackerman won his judgment in the Oakland County case for around $3 million. In September 2009, James Miller distributed $7 million in cash held by Miller Parking Chicago to its shareholders. Not long after, James dissolved the Chicago company. On October 7, 2009, Miller Parking Detroit filed for bankruptcy.

-2-

Two years later, on October 7, 2011, the Trustee in the present bankruptcy sued James Miller, Miller Parking Chicago, and its former shareholders, including the Weinstein and Stein parties. That case is pending presently in this Court. *Lim v. Miller Parking*, 11-14422. The Trustee alleges that James and Bruce Miller commingled the affairs of their two companies and carried out a fraudulent scheme to funnel assets from Miller Parking Detroit to Miller Parking Chicago, in order to evade creditor claims against Miller Parking Detroit. The Trustee's suit asserts claims for: (1) preference to recover "loan payments" made by the Detroit company to the Chicago company on a fake promissory note; (2) fraudulent transfers based on other unidentified inter-company payments; (3) fraudulent transfers for any payments made by the Detroit company to any defendant; (4) disgorgement; (5) substantive consolidation; (6) alter ego; and (7) breach of fiduciary duty by James Miller.

In April 2013, attorneys for the Weinstein and Stein parties advised the Court that they had reached a settlement in principle with the Trustee (also the plaintiff in *Lim v. Miller Parking*, 11-14422) and the Ackerman creditors. The terms of the "triangular" settlement would resolve all claims against the Weinstein and Stein parties in the Trustee's action pending in this Court (*Lim v. Miller Parking*). The agreement to resolve the claims against the defendants in the *Lim* case is conditioned on (1) the execution of a settlement between the Ackerman plaintiffs and the Weinstein and Stein defendants that would result in the dismissal of all claims against those defendants in the federal litigation; (2) payment by the Weinstein and Stein defendants of $250,000 to the bankruptcy estate; and (3) conveyance by Doris Miller (mother and grandmother of the individual defendants in *Lim*) to the Ackerman plaintiffs of her 10% interest in the Center Parking Associates Limited

Partnership, which derives income from certain parking facilities in Detroit.  The parties to the settlement assert that the Center Parking interest would be valued at $1 million.

The bankruptcy Trustee asserts that the claims filed in the bankruptcy estate amount to (1) $4 million in claims by CH Holding, which comprises no less than two-thirds of all claims filed by all creditors; (2) a claim for $2 million filed by James N. Miller and his various family trusts (the Miller defendants); and (3) $62,000 in uncontested claims.  The bankruptcy Trustee contends that the Miller claim for $2 million is invalid because it is based on a promissory note executed by Miller Detroit in favor of Miller Chicago, for which Miller Detroit received no substantial consideration in return.  According to the Trustee, this promissory note merely served as an accounting smokescreen for the fraudulent sacking of assets from Miller Detroit, as part of Bruce Miller's and James Miller's schemes to shelter Miller Detroit's assets from its largest creditor, CH Holding. Under the terms of the settlement agreement, the holders of the uncontested claims would receive a 16.6% immediate interim distribution from the funds paid into the estate, which would transform into 25% if the James Miller claim in the bankruptcy estate is denied.  If the James Miller claim is sustained, then the settlement agreement requires CH Holding to indemnify the bankruptcy estate against the James Miller claim, to the extent of the assumed $1 million value of the Center Parking interest that it would receive.

Finally, the Trustee also would be authorized under the settlement agreement to make a request for trustee compensation on a "constructive disbursement of $1 million," subject to a hearing and approval by the bankruptcy court.

Appellant James N. Miller Trust objected to the settlement.  On October 22, 2013, the bankruptcy court held a hearing on the Trustee's motion to authorize the compromise and an interim

distribution.  The bankruptcy court found that the proposed settlement was fair and equitable and in the best interests of the estate, and it therefore granted the motion to authorize the settlement and interim distribution.  The bankruptcy court noted in particular that (1) the litigation was complex and the outcome of the Trustee's claims against the Weinstein and Stein defendants was uncertain, due to the complexity of the accounting and business relationships between all of the involved parties; (2) it would be difficult to establish the proper amount owed by the Weinstein and Stein defendants, due to the lack of documentation of many of the financial dealings between the Miller companies; (3) the $250,000 paid to the estate and the $1 million to its largest creditor, CH Holding, was a significant recovery on their claims; (4) the largest creditor of the estate was in favor of the settlement (a fact that the bankruptcy court found "compelling"); and (4) the interim distribution would allow for a substantial immediate payment to all creditors other than the James Miller entities, which otherwise might be delayed by years of litigation in a case that already had been pending since 2009.  (Hr'g Tr. 17-20, Pg ID 145-48, Oct. 22, 2013.)

Appellant James N. Miller Trust appealed the order approving the settlement.

## II.

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts.  28 U.S.C. § 158(a)(1); *Central States, Se. & Sw. Areas Pension Fund v. U.S. Truck Co. Holdings, Inc. (In re U.S. Truck Co. Holdings)*, 341 B.R. 596, 599 (E.D. Mich. 2006). The Sixth Circuit has held that "finality 'is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations.'"  *In re Cyberco Holdings, Inc.*, 734 F.3d 432, 437 (6th Cir. 2013) (quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning)*, 86 F.3d 482, 488 (6th Cir. 1996)).  "Therefore, where an order in a bankruptcy

-5-

case finally dispose[s] of discrete disputes within the larger case, it may be appealed immediately." *Ibid*. (internal quotation marks omitted); *see also Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003) (noting that a bankruptcy court's order overruling a Chapter 13 debtor's objection to claims was a final order because it ended litigation on the merits and left nothing for the court but the execution of judgment). The order approving the settlement disposed of claims by the largest creditors of the estate, and therefore was final and immediately appealable.

<div align="center">III.</div>

The appellant argues that the settlement is not fair and equitable, and that the bankruptcy court erred in its factual determinations because (1) it is possible that it may be difficult to recover from CH Holding if the indemnity provision is invoked; (2) the appellant will suffer irreparable harm if the settlement proceeds, because the 10% interest in the Center Parking partnership could never be recovered once transferred; (3) the appellant believes that the Center Parking interest is worth "double the $1,000,000 estimate of the trustee"; (4) the interim distribution is not fair to all creditors because only CH Holding will get the full benefit of the settlement agreement and receive a payment now, while the Miller interests receive no immediate distribution, and therefore the settlement violates the "absolute priority rule"; (5) the bankruptcy court made its findings regarding the probability of success and likely amount of recovery "even though there had been no evidence presented to the court on this point"; and (6) the settlement would not achieve its purpose of putting an end to expensive litigation, because litigation by the Trustee against the appellant necessarily would continue.

"The bankruptcy court's approval of a settlement agreement is reviewed for an abuse of discretion." *In re MQVP, Inc.*, 477 F. App'x 310, 312 (6th Cir. 2012) (citing *Lyndon Prop. Ins. Co.*

<div align="center">-6-</div>

*v. E. Ky. Univ.*, 200 F. App'x 409, 413 (6th Cir. 2006)).  "The bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de novo."  Fed. R. Bankr. P. 8013; *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935-36 (6th Cir. 2010) (citing *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004)).  "When reviewing for clear error, the question is simply 'whether a reasonable person could agree with the bankruptcy court's decision.'" *Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (quoting *Volvo Comm. Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685–86 (6th Cir. BAP 2005).  The district court should "not disturb the bankruptcy court's findings of fact unless there is the 'most cogent evidence of mistake of justice.'" *WesBanco Bank of Barnesville, Ohio v. Rafoth (In re Baker & Getty Fin. Servs. Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) (quoting *Newton v. Johnson (In re Edward M. Johnson & Assocs., Inc.)*, 845 F.2d 1395, 1401 (6th Cir. 1988)).

"The Federal Rules of Bankruptcy Procedure allow a bankruptcy court to approve a settlement upon the trustee's motion and after notice and a hearing."  *In re Greektown Holdings, LLC*, 728 F.3d 567, 575 (6th Cir. 2013) (citing Fed. R. Bankr. P. 9019(a)).  "Before approving the settlement, the court must 'apprise itself of all facts necessary to evaluate the settlement and make an informed and independent judgment as to whether the compromise is fair and equitable.'" *Ibid.* (quoting *Bard v. Sicherman (In re Bard)*, 49 F. App'x 528, 530 (6th Cir. 2002)).  "*Bard* sets out four factors that a bankruptcy court should consider when evaluating the fairness of a settlement." *Ibid.* "These factors are: '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the

creditors and a proper deference to their reasonable views in the premises.'" *Id.* at 575 n.6 (quoting *Bard*, 49 F. App'x at 530).

"A trustee in bankruptcy has the authority to seek a settlement of claims available to the debtor, but any proposed settlement is subject to the approval of the bankruptcy court, which enjoys 'significant discretion.'" *In re MQVP, Inc.*, 477 F. App'x 310, 312-13 (6th Cir. 2012) (citing Fed. R. Bankr. P. 9019(a); *In re Rankin*, 438 F. App'x 420, 426 (6th Cir.2011)). "The very purpose of such a compromise agreement 'is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002)) (quoting *In re A & C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)). Indeed, "the law favors compromise and not litigation for its own sake." *In re MQVP, Inc.*, 477 F. App'x at 312 (citations and quotation marks omitted).

The appellant has not demonstrated any clear error of fact or law in the bankruptcy court's finding that the settlement was fair and equitable. Nor has the appellant shown an abuse of discretion.

The appellant's argument that it may be difficult to recover from CH Holding if its indemnity is invoked is an indulgence in speculation. The appellant points to no facts, economic or otherwise, suggesting that it would be irreparably injured by any possible complications of invoking the indemnity provision. The appellant also argues that the interest in the Center Parking partnership could not be recovered once transferred. But as the Trustee points out, the owner of that interest — Doris Miller — is not a party to any of these matters, and neither the Trustee nor the Miller defendants have any claim against her or her interest in Center Parking. Any failure to "recover"

-8-

an interest over which the appellant has no claim in the first instance therefore cannot establish harm to the appellant, irreparable or otherwise.

The appellant also argues that the Center Parking interest is worth "double the $1,000,000 estimate of the Trustee." But the appellant offers no evidence for its proposed valuation, and it points to nothing in the record that substantiates its belief. Indeed, as the Trustee pointed out in her reply brief in support of her motion to authorize the settlement, on January 30, 2013, James Miller made a written offer to Basil Simon, trustee of the Bruce Miller bankruptcy estate, to purchase a 15% interest in Center Parking for $450,000 — an offer that implies a proportional value of only $300,000 for the 10% interest now at issue. Appellant's Mot. to Stay, Ex. 6, Email dated Jan. 30, 2013 (Pg ID 340).

The appellant next contends that the settlement is not fair to all creditors because only CH Holding will get the "full benefit" of the settlement agreement. It insists therefore that the settlement violates the "absolute priority rule," because "the Trustee's proposed compromise treats identical creditors differently." The "absolute priority rule" survived the 2005 amendments to the Bankruptcy Code. *Ice House America, LLC v. Charles Cardin*, No. 13-5764, --- F.3d --- (6th Cir. May 13, 2014). But the appellant's argument misconstrues the rule, which the Sixth Circuit has explained as follows:

> Under the Bankruptcy Code, a plan may not be confirmed by a court over the objection of a class of creditors unless, among other things, the following requirements are met: (1) under the plan, the class would receive an amount that is equal to or greater than the amount they would receive if the debtor's assets were liquidated, see 11 U.S.C. § 1129(a)(7); and (2) the plan is found to be fair and equitable, see 11 U.S.C. § 1129(b)(1). By incorporating the fair and equitable standard in § 1129(b) of the Code, Congress codified the "absolute priority rule," which provides that absent full satisfaction of a creditor's allowed claims, no member of a class junior in priority to that creditor may receive anything at all on

account of their claim or equity interest.  *See Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 115 (1939).

*In re Dow Corning Corp.*, 456 F.3d 668, 672 (6th Cir. 2006).

The absolute priority rule does not apply in a case such as this where the objecting creditors share the same priority as those that would be parties to the settlement.  *In re Lett*, 632 F.3d 1216, 1222 n.12 (11th Cir. 2011) ("As the absolute priority rule concerns the treatment of unsecured claims vis-á-vis junior claims, we fail to see how the different treatment of the claims in [two classes sharing equal priority] violates the rule.")  As the appellees point out, and as the Trustee noted in her response, there is no difference in priority between the Miller claimants and the parties to the proposed settlement in this case.  It appears undisputed that all of the claimants have filed general unsecured claims in the bankruptcy action, and they therefore all share the same priority of interest in any recovery.  The absolute priority rule only bars a settlement where claims of a junior class are paid while claims of a senior class have not been fully satisfied.  That is not the case here, and the appellant has not cited any legal authority for the novel application of the absolute priority rule to the resolution of claims filed by creditors who share the same priority.

Moreover, it is evident from the terms of the settlement that the factual premise of the appellant's objection is false.  If the Miller claim ultimately is allowed, then equal creditors would be treated equally, because the proceeds of the settlement then would be distributed (or redistributed) in a *pro rata* manner to all claimants.  The agreement specifically requires that all creditors with approved claims — including the James Miller entities, if their $2 million claim is upheld — will be treated equally and allowed their fair pro rata distribution of the proceeds from the bankruptcy estate.  Moreover, the bankruptcy court was aware that the Trustee hotly disputes the validity of the claim filed by the James Miller entities, and the allegedly fraudulent nature of that

-10-

claim forms the entire premise of the pending litigation in the *Lim v. Miller Parking* action, in which the Trustee seeks to recover sums that she alleges are property of the estate, which were removed by means of the same allegedly fraudulent promissory note on which the James Miller entities based their claim in the bankruptcy matter.  The eventual outcome of that litigation will of course resolve their dispute once and for all.

Next, the appellant argues that the bankruptcy court made its findings on the probability of success and likely amount of recovery "even though there had been no evidence presented to the court on this point."  This argument ignores the reasonable conclusion of the bankruptcy court that due to the complex issues involved in the case — as amply illustrated by the extended pendency of three intertwined matters in this Court all concerned with the same basic dispute — the precise facts regarding the liability of the various defendants and the amounts recoverable from them are not subject to ready determination and remain hotly disputed by the parties.  The bankruptcy court simply determined that a recovery of $1.25 million against $4 million in creditor claims (or $6 million if the James Miller claims are included), was "substantial" and that, with the approval of the single creditor holding the majority of the claims, it was in the best interest of the estate to exchange the uncertainty of continued litigation for the certainty of an immediate recovery and distribution. Those findings are sensible and readily yielded by the record, even in the absence of an evidentiary showing.

Finally, to the extent that the appellant asserts that the settlement would not achieve its purpose of putting an end to the litigation — because litigation by the Trustee against the appellant necessarily would continue — this argument ignores the fact that it would achieve the purpose of ending the litigation *against the settling defendants*, and it therefore necessarily would reduce the

-11-

anticipated complexity and expense of any continued dispute with the remaining, non-settling parties.

<div align="center">IV.</div>

The bankruptcy court correctly determined that the proposed settlement is fair and equitable.

Accordingly, it is **ORDERED** that the decision of the bankruptcy court approving the proposed settlement is **AFFIRMED**.

It is further **ORDERED** that the stay of proceedings pending appeal entered March 12, 2014 is **DISSOLVED**.

<div style="margin-left:40%;">
s/David M. Lawson
DAVID M. LAWSON
United States District Judge
</div>

Dated:  May 14, 2014

<div align="center" style="border:1px solid black; background:#cccccc; width:50%;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 14, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON
</div>